UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE FRONTIER COMMUNICATIONS
CORPORATION DERIVATIVE
LITIGATION.

Lead Case No. 3:17-cv-1792 (VAB)

**RULING AND ORDER ON MOTION TO CONSOLIDATE, MOTION TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD COUNSEL, AND MOTION TO DEFER LITIGATION**

Currently pending before the Court are three motions related to this shareholder derivative lawsuit.

First, Cynthia Graham moved to consolidate *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792, with two other cases, *Williams v. McCarthy*, No. 3:18-cv-00826, and *Graham v. McCarthy*, No. 3:18-cv-00844, as well as to appoint counsel, and to modify the Court's Ruling and Order appointing lead plaintiff and lead counsel, ECF No. 34. Graham Br., ECF No. 39.

Second, Plaintiffs in *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792, also moved to consolidate that case with *Williams v. McCarthy*, No. 3:18-cv-00826, and *Graham v. McCarthy*, No. 3:18-cv-00844. Feldbaum Mot. to Consolidate, ECF No. 43.

Third, nominal Defendant Frontier Communications Corporation ("Frontier"), Individual Defendants[1], and Plaintiffs filed a joint motion to defer litigation of the derivative case until after

---

[1] The "Individual Defendants" are Daniel J. McCarthy, Ralph Perley McBride, Donal W. Daniels, Leroy T. Barnes, Jr., Peter C.B. Bynoe, Diana S. Ferguson, Edward D. Fraioli, Pamela D. A. Reeve, Virginia P. Ruesterholz, Howard

1

a ruling on an anticipated motion to dismiss in a related case, *In re Frontier Communications Corporation Securities Litigation*, Lead Case No. 3:17-cv-01617-VAB (the "Direct Securities Action").[2] Mot. to Defer Litig., ECF No. 44.

For the following reasons, the motions to consolidate, ECF Nos. 39, 43, are **GRANTED**. The motion to modify the Court's Ruling and Order and to appoint Ms. Graham as lead plaintiff and Scott + Scott Attorneys at Law LLP ("Scott + Scott") as lead counsel, ECF No. 39, is **GRANTED IN PART AND DENIED IN PART**. The Court will appoint Ms. Graham as co-lead plaintiff with Irving Feldbaum and Scott + Scott Attorneys at Law LLP ("Scott + Scott") as co-lead counsel with Johnson Fistel, LLP ("Johnson Fistel"). The motion to defer litigation is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case. *See* Order on Mot. to Appoint Lead Pl. and Lead Counsel at 2–5, ECF No. 34.

### A. Factual Allegations

In February 2015, Frontier allegedly announced a plan to acquire wireline operations from Verizon Communications, Inc. ("Verizon"), for $10.54 billion in cash and assumed debt. Baker Compl. ¶ 3. Frontier allegedly acquired the wireline in April 2016. *Id.* ¶ 4.

During the following year, Frontier allegedly disclosed that it had lost millions of dollars after the acquisition, in part because of non-paying accounts acquired as a part of the Verizon deal. *Id.* ¶ 5. Daniel McCarthy, Frontier's Chief Executive Officer ("CEO"), allegedly claimed

---

L. Schrott, Mark S. Shapiro, Myron A. Wick, III, John M. Jureller, Mary A. Wilderotter, Mark D. Nielsen, Cecilia K. McKenney, and Larraine D. Segil.

[2] Another related case is pending in the Connecticut Superior Court, *In re Frontier Communications Corporation Shareholder Litigation*, Lead Case No. FST-CV-17-6033884-S (the "State Derivative Action").

that Frontier would clean up and disconnect those accounts. *Id.* ¶¶ 6–7. Frontier's stock dropped. *Id.* ¶ 7.

Frontier continued to lose money over the first quarter of 2017. *Id.* ¶ 8. Ralph Perley McBride, Frontier's Chief Financial Officer ("CFO"), explained that the financial loss was partly due to the company's efforts to clean up the non-paying accounts. *Id.* ¶ 9. Frontier's stock dropped again. *Id.* ¶ 9.

The Individual Defendants allegedly caused the nominal defendant, Frontier, to issue false and misleading statements about its business operations and compliance policies. *Id.* ¶ 10. As a result, and as a result of the decline in Frontier's stock market value, the company allegedly has lost value. *Id.* ¶ 11. Frontier's Board, however, allegedly refuses to initiate litigation against the Individual Defendants for breaches of fiduciary duties, and Plaintiffs therefore assert this shareholder derivative lawsuit on its behalf. *Id.* ¶ 12.

### B. Procedural History

On February 10, 2018, this Court granted a motion to consolidate two cases: *Baker v. McCarthy*, No. 3:17-cv-1792, and *Feldbaum v. Barnes*, No. 3:17-cv-1893. ECF No. 19. Together, those cases became *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792.

On March 22, 2018, the Court granted an unopposed motion to appoint Celeste Baker and Irving Feldbaum as joint lead plaintiffs, and to approve their choices of: Johnson Fistel as lead counsel, Diserio Martin O'Connor & Castigliono LLP ("Diserio Martin") as liaison counsel, and the Law Offices of Nicholas Koluncich III, LLC as additional counsel for Plaintiffs. Order at 1, ECF No. 34.

On April 3, 2018, the parties filed a joint motion to extend the deadline for filing a Rule 26(f) Report until after the filing of an amended complaint in the Federal Direct Securities Action. ECF No. 36. In order to have reasonable time to review the amended complaint in the Direct Securities Action, the parties requested that the consolidated complaint in the Derivative Action be filed on or before May 30, 2018, and the 26(f) Report be filed sixty days after that. *Id.* On April 4, 2018, the Court granted the motion. Order, ECF No. 37 (granting motion for extension of time "for the filing of a Rule 26(f) report to sixty (60) days following the filing of a consolidated complaint in the Federal Securities Action").

On May 18, 2018, Ms. Graham, the plaintiff in *Graham v. McCarthy*, No. 3:18-cv-00844, filed a Notice of Related Cases. ECF No. 38. On May 24, 2018, she filed a motion to appoint counsel and modify the March 22, 2018 Ruling and Order on Motion to Appoint Lead Plaintiff and Approve Lead Counsel, and a motion to consolidate *Graham v. McCarthy*, No. 3:18-cv-00844, *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792, and *Williams v. McCarthy*, No. 3:18-cv-00826. ECF No. 39.

Also on May 24, 2018, Ms. Baker and Mr. Feldbaum filed a motion to consolidate *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792, with *Williams v. McCarthy*, No. 3:18-cv-00826, and *Graham v. McCarthy*, No. 3:18-cv-00844. ECF No. 43. That same day, Ms. Baker, Mr. Feldbaum, Frontier, and the Individual Defendants filed a joint motion to defer litigation until after a ruling on an anticipated motion to dismiss in the Frontier Direct Securities Action, *In re Frontier Communications Corporation Securities Litigation*, No. 3:17-cv-01617-VAB. ECF No. 44.

On June 14, 2018, the Court granted a voluntary dismissal of one of the co-lead plaintiffs, Ms. Baker, who had passed away. ECF No. 53. Mr. Feldbaum represented that he would continue to pursue this action on behalf of Frontier. ECF No. 51.

## II. STANDARD OF REVIEW

A district court will consolidate actions that share "common question[s] of law or fact." Fed. R. Civ. P. 42(a). "A party moving for consolidation 'must bear the burden of showing the commonality of factual and legal issues in different actions, and a district court must examine the special underlying facts with close attention before ordering a consolidation.'" *R.W. Grand Lodge of Free & Accepted Masons of Pennsylvania v. Meridian Capital Partners, Inc.*, 634 Fed. App'x 4, 6 (2d Cir. 2015) (quoting *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *In re Facebook, Inc., IPO Securities and Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)).

"The appointment of lead plaintiff and lead counsel in a consolidated shareholder derivative litigation is a matter of discretion." *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-cv-1849, 2006 WL 3761986, at *1 (E.D.N.Y. Sept. 22, 2006) (citing *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958); 9 Wright & Miller, Fed. Prac. & Proc.: Civil 2d § 2385 at 463 (1995)).

The decision to grant a stay of litigation "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936). The

5

district court therefore "has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *affirmed*, 134 S. Ct. 2250 (2014); *see also Kaye v. Merck & Co., Inc.*, 3:10-cv-1546 (RNC), 2014 WL 2002447, at *2 (D. Conn. May 15, 2014) (noting district court's "inherent discretion to manage discovery to conserve judicial and litigant resources and avoid prejudice").

### III. DISCUSSION

#### A. Motion to Consolidate

The Court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also R.W. Grand Lodge*, 634 Fed. App'x at 6 (holding that district court did not abuse its discretion when it consolidated claims that had "common questions of fact among all four consolidated actions which center on the representations that Appellees made in their investor presentations, quarterly reports, and letters to investors that" affected investors' financial decisions); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ("Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay.").

Ms. Graham moves to consolidate *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792, with *Williams v. McCarthy*, No. 3:18-cv-00826, and *Graham v. McCarthy*, No. 3:18-cv-00844, arguing that all three are shareholder derivative suits against nearly the same defendants involving largely the same facts and claims. Graham Mot. to Consolidate, ECF No. 39. Mr. Feldbaum also moves to consolidate those three cases, also arguing that all three cases are shareholder derivative actions arising out of the same events and

6

against the same defendants. Feldbaum Mot. to Consolidate, ECF No. 43.[3] The Court agrees and grants both motions to consolidate these cases.

The Court has "examine[d] the special underlying facts with close attention," *R.W. Grand Lodge*, 634 Fed. App'x at 6 (quoting *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)), and determines that these three shareholder derivative actions, all based on alleged misrepresentations and omissions related to Frontier's acquisition of Verizon's wireline operations, should be consolidated.

Each Complaint alleges that the Individual Defendants, who worked at Frontier, breached their fiduciary duties to the company by making false and misleading statements about whether the acquisition of Verizon's wireline operations was successful. Baker Compl. ¶¶ 1–12, 117–32; Feldbaum Compl. ¶¶ 115–22; Graham Compl. ¶¶ 1–6, 37–46, 78–100; Williams Compl. ¶¶ 1–11, 96–100. Each Complaint also alleges that any stockholder demand to bring the asserted claims against the Individual Defendants would be futile. Baker Compl. ¶¶ 97–116; Feldbaum Compl. ¶¶ 104–14; Williams Compl. ¶¶ 84–94; Graham Compl. ¶¶ 66–77.

Three Complaints also assert that the Individual Defendants' actions resulted in unjust enrichment. Baker Compl. ¶¶ 113–38; Feldbaum Compl. ¶¶ 128–31; Williams Compl. ¶¶ 109–13. And two Complaints assert that the Individual Defendants' actions resulted in corporate waste. Baker Compl. ¶¶ 133–44; Feldbaum Compl. ¶¶ 123–27.

Two complaints assert violations of Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"). Graham Compl. ¶¶ 165–68; Baker Compl. ¶¶ 145–49. And one Complaint asserts federal securities claims under Section 29(b) of the Exchange Act. Graham Compl. ¶¶ 165–68.

---

[3] Mr. Feldbaum represents that he conferred with counsel for the Individual Defendants, who take no position on whether to consolidate these cases and do not oppose the motions. Feldbaum Mot. to Consolidate at 2 n.2.

The Court finds that sufficient common questions of fact and law exist between and among these four Complaints to consolidate the actions, most importantly that each asserts that the Individual Defendants breached their fiduciary duties to Frontier, and that a stockholder demand for the company to bring the asserted claims against the Individual Defendants would be futile. *See* Baker Compl. ¶¶ 1–12, 97–132; Feldbaum Compl. ¶¶ 104–22; Graham Compl. ¶¶ 1–6, 37–46, 66–100; Williams Compl. ¶¶ 1–11, 84–100; *see also* Fed. R. Civ. P. 42(a) (permitting a district court to consolidate actions that involve "common question of law or fact").

Any differences in the specific claims between and among them do not defeat the value in consolidating these actions so that one shareholder derivative lawsuit against the Individual Defendants on behalf of Frontier may proceed. *See In re Facebook, Inc., IPO Securities and Derivative Litig.*, 288 F.R.D. at 34 ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.") (quoting *Kaplan*, 240 F.R.D. at 91).

The Court therefore grants the motions to consolidate these four cases. The cases will proceed as Lead Case *In re Frontier Communications Corporation Derivative Litigation*, No. 3:17-cv-1792.

### B.  Motion to Appoint Lead Plaintiff and Approve Lead Counsel

#### 1.  Lead Plaintiff

In a shareholder derivative action, unlike a private securities litigation action, the Court is not required to appoint a lead plaintiff. *In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3761986, at *1, ("There is no statutory authority such as the Private Securities Litigation Reform Act of 1995 ('PSLRA') . . . which *requires* the Court to appoint a lead plaintiff in a shareholder

derivative action."); *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) ("In complex cases, courts may appoint a plaintiff leadership structure to coordinate the prosecution of the litigation."). If the Court appoints a lead plaintiff, the lead plaintiff must comply with Rule 23.1, which requires that the plaintiff "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1.

Ms. Graham seeks to be appointed lead plaintiff and to replace Mr. Feldbaum, who currently serves in that role, arguing that she "is the only derivative plaintiff to follow the directives of Delaware law and conduct a pre-suit investigation into the alleged wrongdoing by making a books and records demand pursuant to Section 220," and that, as a result, she "obtained highly probative confidential Board minutes and materials from the relevant period." Graham Mot. at 3. Ms. Graham alleges that these materials show that "Frontier's Board knew that the Verizon Acquisition was not bringing the results previously stated, and the materials thus provide a firm foundation for alleging that Defendants consciously allowed Frontier to misrepresent its financial performance." *Id.*

She argues that the other derivative plaintiffs "eschewed a pre-suit books and records investigation and instead filed complaints based solely on publicly available information." *Id.* at 4. She also argues that the other plaintiffs' allegations, "that the Board simply 'had to have known,'" are likely to be found "insufficient to excuse demand," and therefore "Plaintiff Graham is clearly better positioned to lead the Actions and should be appointed as Lead Plaintiff." *Id.* at 5; *see also id.* at 6 ("[O]nly the *Graham* Complaint relies on confidential Frontier Board meeting minutes and materials to plead with particularity the involvement of Frontier's Board with the Company's misrepresentation of the success of the Verizon Acquisition."); *id.* at 11 ("Plaintiff

9

Graham asks the Court to intercede here because the other plaintiffs and their counsel hastily filed litigation, bypassing the favored Section 220 request process.").

Mr. Feldbaum opposes Ms. Graham's motion to be appointed lead plaintiff. Opp. to Graham Mot., ECF No. 52. Mr. Feldbaum argues that he and Johnson Fistel "have already exhibited leadership and have demonstrated a willingness and ability to lead this litigation[.]" *Id.* at 1, 4. Mr. Feldbaum argues that he and his attorneys "took steps to organize the cases and put a leadership structure in place so as to facilitate discussions with defense counsel," "undertook discussions with both defense counsel and counsel in the State Derivative Action to determine the best course of action for the Company," and believe that "the best course of action for the Company was to agree to defer this litigation in favor of the Federal Securities Action assuming the Consolidated Derivative Action was not merely being frozen in place." *Id.* at 5–6. Mr. Feldbaum argues that his Complaint "provides more comprehensive allegations regarding the fallout surrounding the Company's acquisition of . . . wireline broadband, voice, and video business and statewide fiber network services to residential, commercial, and wholesale customers in Connecticut." *Id.* at 7.[4]

Mr. Feldbaum also argues that Ms. Graham's books and records investigation should not justify appointing her lead plaintiff because, first, under Delaware law, "a shareholder who makes a § 220 inspection demand is not necessarily a more adequate derivative plaintiff than one who does not." *Id.* at 9 (citing *Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A. 3d 612, 618 (Del 2013). Moreover, Mr. Feldbaum argues, "any purported advantage Plaintiff Graham might enjoy from [her] receipt of Section 220 documents is temporary at best and does little to advance the

---

[4] Mr. Feldbaum's brief mentions the acquisition of AT&T's wireline operations, but all four Complaints allege that Frontier acquired Verizon's wireline operations. The Court assumes that in the forthcoming consolidated complaint, any discrepancies about the acquisition will be resolved.

case or the interest of the Company given that the Proposed Deferral Order, if granted, will entitle Lead Plaintiff Feldbaum and Johnson Fistel to whatever documents Scott + Scott received through its records request, as well as the additional benefits discussed herein." *Id.* at 11–12.

Here, while the Court agrees that Ms. Graham adds value to this lawsuit, going forward, the lawsuit will be best served by her serving jointly with Mr. Feldbaum. Although performing a books and records investigation does not guarantee that a plaintiff will become a lead plaintiff, *see Pyott*, 74 A.3d at 618 ("We reject the 'fast filer' irrebuttable presumption of inadequacy."), a books and records investigation may put a plaintiff in a position to plead sufficiently particular facts to overcome a motion to dismiss. *See South v. Baker*, 62 A.3d 1, 6 (Del. Ch. 2012) ("Because a plaintiff asserting a *Caremark* claim must plead facts sufficient to establish board involvement in conscious wrongdoing, our Supreme Court has admonished stockholders repeatedly to use Section 220 of the General Corporation Law, 8 *Del. C.* § 220, to obtain books and records and investigate their claims before filing suit."). As a result, based on the document productions that Ms. Graham obtained from Frontier, she is able to allege that Frontier's Board knew details about the company's poor financial performance after the wireline acquisitions, including that there was a risk that Frontier would breach its credit agreements by taking on too much debt, and that the Board had access to revenue projections that showed that the Company needed to improve. Graham Compl. ¶¶ 52–54.

At the same time, Mr. Feldbaum has so far effectively led this case by managing its pace relative to the direct securities case against Frontier, *In re Frontier Communications Corporation Securities Litigation*, Lead Case No. 3:17-cv-01617-VAB. *See* ECF No. 36 (managing, in coordination with Defendants, schedule relative to pace of direct action); ECF No. 44 (same).

The Court thus finds that Ms. Graham's investigation into Frontier's books and records will assist the prosecution of this case, and assist Mr. Feldbaum as this lawsuit proceeds. Her motion to modify the Court's first Order appointing Mr. Feldbaum and Ms. Baker co-lead plaintiffs therefore is granted in part and denied in part and Ms. Graham is appointed as co-lead plaintiff with Mr. Feldbaum.

### 2. Lead Counsel

In determining whether to approve a lead plaintiff's selection for lead counsel, the Court must consider whether that lead counsel is "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). "Courts consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009) (citing Fed. R. Civ. P. 23(g)(1)(A)). Courts may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), including "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel," *In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3761986, at *2–3.

Courts may also consider "whether counsel 'are qualified and responsible, . . . [whether] they will fairly and adequately represent all of the parties on their side, and . . . [whether] their charges will be reasonable.'" *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. at 272 (quoting *In re Bear Stearns*, 08 M.D.L. No. 1963 (RWS), 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009)) (internal citation omitted). Courts also have appointed co-lead counsel

where this arrangement adds appropriate value to the case. *See In re Bank of America Corp. Securities, Derivative and Employment Retirement Income Security Act (ERISA) Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009) ("[A]ppointment of multiple counsel is routine and widely accepted.").

Here, consistent with the reasoning for adding Ms. Graham as a co-lead plaintiff with Mr. Feldbaum, the Court will appoint Scott + Scott as co-lead counsel with Johnson Fistel.

### C. Motion to Defer Litigation

"'The decision whether to issue a stay is firmly within a district court's discretion,' and in balancing the relevant factors 'the basic goal is to avoid prejudice.'" *Kaye*, 2014 WL 2002447, at *2 (quoting *United Rentals, Inc. v. Chamberlain*, 3:12-cv-1466 (CSH), 2013 WL 6230094, at *3 (D. Conn. Dec. 2, 2013)).

Mr. Feldbaum filed a joint motion with the Individual Defendants to defer litigation in this case until after the Federal Direct Action has proceeded through the motion to dismiss stage. Mot. to Defer, ECF No. 44. The parties argue that "[t]he Federal Securities Action and the Federal Derivative Action arise out of substantially similar operative facts, as both actions allege that the Individual Defendants made false and misleading statements on behalf of the Company related to the Company's agreement to acquire certain wireline operations of Verizon Communications, Inc., and its subsequent completion of that acquisition. Compl. ¶ 7.

The parties also argue that another case arises out of substantially the same alleged misconduct, a derivative action currently pending in Connecticut Superior Court. *Id.* ¶ 9. They argue that, "in the interests of preserving the Company's and the Courts' resources, efficient and effective case management, and moving the case expeditiously towards resolution," litigation on

13

the case should be deferred until the Court rules on an anticipated motion to dismiss in the Direct Action. *Id.* ¶ 12.

Ms. Graham opposes the motion to defer litigation. Opp. to Mot. to Defer, ECF No. 47. She argues that "a stay of litigation is an extraordinary remedy that should only be granted in rare circumstances," and that the moving parties here have not justified a need to stay the litigation. *Id.* at 3. She argues that continuing with this litigation will be more efficient because the Court will need to decide demand futility as a threshold matter, "and it can easily be decided on the same track as the motion to dismiss in the Securities Action." *Id.* at 4. She also argues that there are fundamental differences between the direct action and the derivative action. *Id.* at 5 ("The actions, like all related derivative and securities actions, present disparate claims, issues, remedies and legal standards, and involve largely different parties and different counsel."). Finally, she argues that delaying resolving the demand futility issue does not preserve resources, because the Court will need to, at some point, adjudicate the issue. *Id.* at 8. And she argues that "the Company and its plaintiff-shareholders will be compromised by a delay in the Derivative Action." *Id.* at 9. The Court disagrees.

Exercising its discretion in the management of cases, *see Deitz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (noting the district court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases"), the Court agrees that the path of this litigation, as negotiated by Mr. Feldbaum, currently lead plaintiff and, Johnson Fistel, currently lead counsel, and as agreed to by Defendants, is appropriate. *See* Feldbaum Opp. to Graham Mot. at 6 ("The Proposed Deferral Order, if entered, will (i) preserve resources for the Company, the parties, and the respective Courts by ensuring the Related Actions will proceed efficiently . . . ."); *see also id.* ("Importantly, the joint deferral in no way prevents Lead Plaintiff

Feldbaum [and] Johnson Fistel from filing a consolidated complaint while the Consolidated Derivative Action is deferred."). The Court therefore will grant the stay requested.

## IV. CONCLUSION

For the foregoing reasons, the motions to consolidate, ECF Nos. 39, 43, are **GRANTED**. The motion to modify the Court's ruling and order and to appoint Ms. Graham as lead plaintiff and Scott + Scott as lead counsel, ECF No. 39, is **GRANTED IN PART AND DENIED IN PART**. The Court will appoint Graham as co-lead plaintiff with Irving Feldbaum and Scott + Scott Attorneys at Law LLP as co-lead counsel with Johnson Fistel, LLP. The motion to defer litigation is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of July, 2018.

/s/ Victor A. Bolden
THE HONORABLE VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE